SABERS, Circuit Court Judge
(concurring specially).
[¶ 44.] What happened here was wrong in a great many ways. I write separately to discourage litigators from following this path in the future. Nevertheless, I respectfully but reluctantly concur.
[¶ 45.] In oral argument to this Court, defense counsel argued that this is a case about notice. And, indeed, it is. As outlined in the majority opinion, a state statute expressly informs its readers that second-degree murder is a lesser included offense of first-degree murder. SDCL 22-16-20.1. That statute went into effect in 2005. 2005 S.D. Sess. Laws ch. 120,' § 436. Our caselaw also makes clear that, although a less-than-perfect fit, second-degree murder satisfies the elements test previously adopted by this Court. See, e.g., State v. Giroux, 2004 S.D. 24, ¶ 7, 676 N.W.2d 139, 142; State v. Hoadley, 2002 S.D. 109, ¶ 64, 651 N.W.2d 249, 264. But the prosecution tried this case, both in and out of the courtroom, as a first-degree murder case. It was never a second-degree murder case.[10] Before trial began, the prosecution even filed a motion to preclude the defense from asking for an instruction on second-degree manslaughter arguing, in part, that there was no basis for such an instruction because the evidence of premeditation was so strong. As a result, no one can fault the defense for being surprised at the prosecution’s elev *603 enth-hour request for an instruction on, second-degree murder.
[¶ 46.] The trial court here was put in a remarkably difficult position by the procedural posture in which the issue arose. As the majority points out, the prosecution first requested the lesser" included offense instruction following'the close of evidence, just minutes before closing arguments were to be given. This was the very first time the defense or the trial- court had heard of this reversal in the prosecution’s theory of the case. Had the defense requested a continuance to respond to the newly added charge, the trial court would almost certainly have granted that request. After multiple days of trial, the jury would have been sent away for an indeterminate amount of time, while the court hoped for unfailing adherence to the jurors’ oaths of confidentiality — all of this in a highly publicized case. Alternatively, the trial court could have denied the requested instruction, and risked reversal from this Court.[11] Neither of these options are fair expectations of the trial court.
[IT 47.] Meanwhile, the defense had no obligation to present any evidence. At the close of the prosecution’s case, the defense likely reached the same conclusion as did the prosecution — that the record evidence of premeditated murder had fallen short of a conviction. So, the defense respondr ed accordingly. The defense put on no psychiatric testimony — evidence that was arguably relevant to the depraved-mind-theory of the uncharged second-degree murder count.[12] The defendant did not take the stand — perhaps signaling a strategic decision that it was unnecessary, given the weak evidence of premeditation. And then, just minutes before closing arguments, the defense was met with an entirely new and, on these facts, unexpected theory of the case when the prosecution threw a new charge at the wall hoping it would stick. '
[¶48.] Despite these concerns, I concur. The majority’s opinion is well-reasoned and thoroughly and accurately sets forth the settled law of this State. According tó that law, what occurred here was constitutionally permissible. It was also unnecessary. Just because we can do something, does not mean that we should. We have .many rules in place throughout our system of justice to prevent trial by ambush. I suggest we steer clear of a practice that allows for charging by ambush.
[¶ 49.] MYREN, Circuit Court Judge, joins this special concurrence.

. As to the homicide, the prosecution sought and secured an indictment for first-degree murder only. The indictment did not include any charges of second-degree murder or manslaughter.

. When a defendant files a direct appeal, the prosecution may file a notice of review challenging the refusal to give a requested instruction. See SDCL 23A-32-14; see generally State v. Vandergrift, 1997 S.D. 5, ¶ 8, 558 N.W.2d 862, 864 "(declining to consider an issue where the prosecution failed to file ec notice of review under SDCL 15-26A-22)..

. Such testimony was available given the expert testimony previously offered at the ju'■venile transfer hearing. That testimony included an opinion that the defendant's executive functioning capability was that of an 11- or 12-year-old.